IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| **SENIOR HOUSING REPOSITION PARTNERS 9, LLC**, a Colorado Limited Liability Company, <br><br>   *Plaintiff*, <br><br> v. <br><br> **CHAD CABLE**, individually, **PHIL MORGAN**, individually, and **THE ESTATE OF JAMES L. MASTERS, IV** Joint and Severally. <br><br>   *Defendants*. | § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 6:24-cv-191 |

## Plaintiff's Complaint

Plaintiff Senior Housing Reposition Partners 9, LLC ("**Lender**")[1] files this Original Complaint against Chad Cable, Phil Morgan, and the Estate of James L. Masters, IV (collectively, "**Guarantors**") and shows as follows:[2]

### I. NATURE OF THE ACTION

1. Lender files this lawsuit to recover amounts that are due and owing on a debt evidenced by the Notes described below (the "**Loan**") made by Original Lender to CMM Mineola LLC ("**Borrower**"). The Loan is secured by a commercial building commonly known as Autumn Wind Assisted Living located at 135 Autumn Wind Court, Mineola, Texas 75773 (the "**Property**"). Borrower owns the Property.

2. Guarantors guaranteed the Loan pursuant to Guaranty Agreements, making them "jointly and severally" liable "together with their heirs, legal representatives, successors and

---

[1] Plaintiff is successor in interest to the Original Noteholder.
[2] Capitalized terms not immediately defined are defined below.

PLAINTIFF'S COMPLAINT – PAGE 1

assigns" and "unconditionally guarant[y] the faithful, prompt and complete compliance by Borrower with all terms and conditions of the Note, the Deed of Trust securing payment of the Liabilities and all other agreements, documents and instrument securing payment of the Liabilities or related thereto." (*See, e.g.*, Guaranty Agreement, **Ex. 16**.)

3. In conjunction with this action, the Lender will be seeking appointment of a Receiver through the Wood County District Court. Lender expects (a) the Property to be sold via a receiver's sale or other method, and (b) there will remain a substantial deficiency following disposition of the Property due to, among other things, (i) Borrower's numerous and long-standing defaults on the Loans; and (ii) Borrower's non-payment of real estate taxes. (*See* Citation of Delinquent Tax Suit, Cause No. T-4561, **Ex. 24.**)

4. Lender brings this lawsuit against Guarantors to recover damages owed by Guarantors pursuant to the Guarantees. (*Id.*)

## II. JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because, as outlined below, complete diversity of citizenship exists between Lender, on the one hand, and Guarantors, on the other hand, and because the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

6. Guarantors are subject to personal jurisdiction in Texas because, among other reasons, Guarantors transacted business in this state and are indebted to Lender under a defaulted loan secured by Texas property.

7. Venue of this action is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Lender's claim occurred in this District.

## III. PARTIES

8. Lender is a Colorado limited liability company. For all purposes of the action described in this Complaint, Lender may be served with any pleading in this matter through its undersigned counsel of record. For purpose of diversity jurisdiction, the Lender's citizenship is determined by the citizenship of its members. They are as follows:

   a. Lender's only member is a Colorado limited liability company, Mineola SH LLC. For purposes of jurisdiction, Mineola SH LLC is a Colorado citizen.

   b. The only member of Mineola SH LLC is Mark Connor, an individual who resides in Colorado. For purposes of jurisdiction, Mr. Connor is a citizen of Colorado.

9. Defendant Chad Cable is a licensed Texas attorney whose offices are located at 323 Gilmer Street, Sulphur Springs, Texas 75482. Mr. Cable also resides in Sulphur Springs, Texas. Accordingly, Mr. Cable is a citizen of Texas. He may be served at the above address.

10. Defendant Phil Morgan is a Texas citizen who resides at 1622 Raintree Circle, Sulphur Springs, Texas 75842. Accordingly, Mr. Morgan is a citizen of Texas. He may be served at the above address.

11. Defendant Estate of Jimmy Masters is represented by his Executor, Nina Monique Masters. Ms. Masters resides at 408 McBride Street, Como, Texas 75431, and 2500 County Road 3520, Dike, Texas 75437. Accordingly, the Estate of Masters is a citizen of Texas. The Estate may be served via Ms. Masters at the above addresses.

## IV. FACTUAL ALLEGATIONS

**A.  THE SECURED INDEBTEDNESS**

12. Borrower is indebted to Lender pursuant to those certain Adjustable Rate Notes (the "**Notes**"), executed by Borrower, as maker, payable to the order of City National Bank of

Sulphur Springs, predecessor-in-interest to Lender ("**Original Lender**"), as payee, in connection with:

  a. Loan Number 9089533, in the principal amount of $6,635,410.00, represented by a certain Deed of Trust dated December 30, 2013, and recorded in the Official Public Records of the County Clerk of Wood County, Texas (the "**Wood County Clerk Records**"), Doc Number 201400000022, and represented by that certain Commercial Security Agreement dated December 30, 2013, and Guaranty dated December 13, 2013, executed by Defendants. (*See* **Ex. 1 (Note 1)**.)

  b. Loan Number 9301334, in the principal amount of $1,612,963.78, represented by a certain Deed of Trust dated June 26, 2018, and recorded in the Wood County Clerk Records, Doc Number 201800005771, and represented by that certain Commercial Security Agreement dated December 30, 2013, and Guaranty dated June 26, 2018, executed by all Defendants. (*See* **Ex. 2 (Note 2)**.)

  c. Loan Number 9301326, in the principal amount of $2,972,735.00, represented by a certain Deed of Trust dated June 26, 2018, recorded in the Wood County Clerk Records, Doc Number 201800005774, and represented by that certain Commercial Security Agreement dated December 30, 2013, and Guaranty dated June 26, 2018, executed by Defendants. (*See* **Ex. 3 (Note 3)**.)

  d. Loan Number 9310798, in the principal amount of $144,005.48, represented by a certain Deed of Trust dated January 25, 2019, recorded in the Wood County Clerk Records, Doc Number 201900000779, and represented by that certain Commercial Security Agreement dated December 30, 2013, and Guaranty dated January 25, 2019, executed by all Defendants. (*See* **Ex. 4 (Note 4)**.)

  e. Loan Number 9311630, in the principal amount of $139,000.00, represented by a certain Deed of Trust (Fifth Lien) dated May 30, 2019, and recorded in the Wood County Clerk Records, Doc Number 201900005205, and represented by that certain Commercial Security Agreement dated December 30, 2013, and Guaranty dated May 30, 2019, executed by all Defendants. (*See* **Ex. 5 (Note 5)**.)

13. Repayment of the above Note 1 is secured by, among other things, the Commercial Security Agreement dated December 30, 2013 (as amended and/or assigned) ("**Security Agreement**"), and Deed of Trust, executed and delivered by Borrower, as grantor, to Original Lender, as beneficiary, recorded as Instrument No. 2014-00000022 in the Wood County Clerk Records, covering, among other things, the Property ("**First Deed of Trust**"). (*See* Security Agreement, **Ex. 6**; *see also* Deed of Trust for Note 1, **Ex. 7**.)

14. Repayment of the above Note 2 is secured by, among other things, the Deed of Trust dated June 26, 2018, executed and delivered by Borrower, as grantor, to Original Lender, as beneficiary, recorded as Instrument No. 2018-00005771 in the Wood County Clerk Records, covering, among other things, the Property ("**Second Deed of Trust**" for Note 2). (*See* **Ex. 8**.)

15. Repayment of the above Note 3 is secured by, among other things, the Third Lien Deed of Trust (as amended and/or assigned) dated June 26, 2018, executed and delivered by Borrower, as grantor, to Original Lender, as beneficiary, recorded as Instrument No. 2018-00005774 in the Wood County Clerk Records, covering, among other things, the Property ("**Third Deed of Trust**" for Note 3). (*See* **Ex. 9**.)

16. Repayment of the above Note 4 is secured by, among other things, the Fourth Lien Deed of Trust, executed and delivered by Borrower, as grantor, to Original Lender, as beneficiary, recorded as Instrument No. 2019-00000779 in the Wood County Clerk Records, covering, among other things, the Property ("**Fourth Deed of Trust**" for Note 4). (*See* **Ex. 10.**)

17. Repayment of the above Note 5 is secured by, among other things, the Fifth Lien Deed of Trust dated May 30, 2019, executed and delivered by Borrower, as grantor, to Original Lender, as beneficiary, recorded as Instrument No. 201900005205 in the Wood County Clerk Records, covering, among other things, the Property ("**Fifth Deed of Trust**" for Note 5; and together with the First, Second, Third and Fourth Deeds of Trust, the "**Deeds of Trust**"). (*See* **Ex. 11.**)

B. **THE GUARANTY AGREEMENTS.**

18. Defendant Guarantors signed five separate, absolute, unlimited, irrevocable, unconditional and continuing Guarantees of payment and performance and not of collection, agreeing, among other things, to be jointly and severally liable for the Notes, including all interest, penalties, expenses, attorney's fees, and other collection costs as provided for in the Loan

Documents (as defined below), together with any and all future indebtedness incurred by Borrower payable to Lender. (*See* Guarantees, **Exs. 12-16**.)[3]

*The December 30, 2013 Guaranty – Note 1.*

19. On December 30, 2013, each Guarantor executed three identical Guaranty agreements, agreeing to, among other things, be personally liable for all of Borrower's obligations under the Loan Documents, including Note 1, as follows:

> the obligations under the Deed of Trust referenced above securing the Note and any other documents executed by Borrower evidencing or securing the Note (collectively, the "Loan Documents"), plus all interest, penalties, expenses, attorney's fees, and other collection costs as provided in the Loan Documents, together with any and all future indebtedness incurred by Borrower payable to Lender.

(*See* ¶1, **Group Ex. 12**.)

20. In addition, the Guaranty is a guaranty of payment and not of collection, meaning that Lender need not first obtain a judgment against Borrower before enforcing the Guaranty against Guarantors:

> Lender need not resort to Borrower or any other person or proceed against collateral before pursuing its rights against Guarantor or any other guarantor. Lender's action or inaction with respect to any right of Lender under the law or any agreement will not alter the obligation of Guarantor hereunder. Lender may pursue any remedy against Borrower or any collateral or under any other guaranty, without altering the obligations of Guarantor hereunder and without liability to Guarantor, even though Lender's pursuit of such remedy may result in Guarantor's loss of rights of subrogation or to proceed against others for reimbursement of contribution or any other right.

(*Id.* at ¶5.)

21. In addition, each Guarantor agreed that the obligations owed pursuant to the Guaranty shall not be reduced by reason of offset or any other defense:

> Guarantor waives (a) diligence in preserving liability of any person on the Guaranteed Indebtedness and in collecting or bringing suit to collect the Guaranteed Indebtedness; (b) all rights of Guarantor under chapter 34 of the Texas Business and Commerce Code and rule 31 of the Texas Rules of Civil Procedure, section 17.001 of the Texas Civil Practice and Remedies Code, and section 51.003, 51.004

---

[3] Each of the Guarantees are referred to as a "**Guaranty**" and the Guarantees are collectively referred to as the "**Guarantees**"

and 51.005 of the Texas Property Code; c) protest; (d) notice of extensions, increases, renewals, or rearrangements of the Guaranteed Indebtedness; and (e) notice of acceptance of this guaranty, of creation of the Guaranteed Indebtedness, of failure to pay the Guaranteed Indebtedness as it matures, or any other default, of adverse change in Borrower's financial condition, of release or substitution of collateral, of intent to accelerate, of acceleration, and of subordination of Lender's rights in any collateral, and every other notice of every kind. Guarantor's obligations under this guaranty will not be altered nor will Lender be liable to Guarantor because of any action or inaction of Lender in regard to a matter waived or of which notice is waived by Guarantor in the preceding sentence.

> \*              \*              \*
>
> Guarantor will remain liable for the Guaranteed Indebtedness even though the Guaranteed Indebtedness may be unenforceable against or uncollectible from Borrower or any other person because of incapacity, lack of power or authority, discharge, or any other reason.

(*Id*. at ¶¶2 and 6.)

### The June 26, 2018 Guaranty – Note 2.

22. On June 26, 2018, Guarantors executed three identical Guaranty agreements reiterating that the Guaranty is "an absolute, irrevocable, unconditional, and continuing guaranty of payment and performance and not of collection," meaning that Lender need not first obtain a judgment against Borrower before enforcing the Guaranty against Guarantors:

> Lender need not resort to Borrower or any other person or proceed against collateral before pursuing its rights against Guarantor or any other guarantor. Lender's action or inaction with respect to any right of Lender under the law or any agreement will not alter the obligation of Guarantor hereunder. Lender may pursue any remedy against Borrower or any collateral or under any other guaranty without altering the obligations of Guarantor hereunder and without liability to Guarantor, even though Lender's pursuit of such remedy may result in Guarantor's loss of rights of subrogation or to proceed against others for reimbursement of contribution or any other right.

(*See* Guaranty, ¶5, **Group Ex. 13**.)

23. In addition, each Guarantor agreed that the obligations owed pursuant to the Guaranty shall not be reduced by reason of offset or any other defense:

> Guarantor waives (a) diligence in preserving liability of any person on the Guaranteed Indebtedness and in collecting or bringing suit to collect the Guaranteed Indebtedness; (b) all rights of Guarantor under chapter 43 of the Texas Civil Practice and Remedies Code, section 17.001 of the Texas Civil Practice and Remedies Code, rule 31 of the Texas Rules of Civil Procedure, and sections 51.003, 51.004, and 51.005 of the Texas Property Code; (c) protest; (d) notice of extensions, increases, renewals, or rearrangements of the Guaranteed Indebtedness; and (e) notice of acceptance of this guaranty, of creation of the Guaranteed Indebtedness, of failure to pay the Guaranteed Indebtedness as it matures, of any other default, of adverse change in Borrower's financial condition, of release or substitution of collateral, of intent to accelerate, of acceleration, and of subordination of Lender's rights in any collateral, and every other notice of every kind. Guarantor's obligations under this

> guaranty will not be altered nor will Lender be liable to Guarantor because of any action or inaction of Lender in regard to a matter waived or of which notice is waived by Guarantor in the preceding sentence.

*       *       *

> Guarantor will remain liable for the Guaranteed Indebtedness even though the Guaranteed Indebtedness may be unenforceable against or uncollectible from Borrower or any other person because of incapacity, lack of power or authority, discharge, or any other reason.

(*Id.* at ¶2 and 6.)

### *The June 26, 2018, Guaranty - Note 3.*

24.     On June 26, 2018, Guarantors executed three identical Guaranty agreements reiterating that the Guaranty is "an absolute, irrevocable, unconditional, and continuing guaranty of payment and performance and not of collection," meaning that Lender need not first obtain a judgment against Borrower before enforcing the Guaranty against Guarantors:

> Lender need not resort to Borrower or any other person or proceed against collateral before pursuing its rights against Guarantor or any other guarantor. Lender's action or inaction with respect to any right of Lender under the law or any agreement will not alter the obligation of Guarantor hereunder. Lender may pursue any remedy against Borrower or any collateral or under any other guaranty without altering the obligations of Guarantor hereunder and without liability to Guarantor, even though Lender's pursuit of such remedy may result in Guarantor's loss of rights of subrogation or to proceed against others for reimbursement of contribution or any other right.

(*See* Guaranty, ¶5, **Group Ex. 14**.)

> Guarantor waives (a) diligence in preserving liability of any person on the Guaranteed Indebtedness and in collecting or bringing suit to collect the Guaranteed Indebtedness; (b) all rights of Guarantor under chapter 43 of the Texas Civil Practice and Remedies Code, section 17.001 of the Texas Civil Practice and Remedies Code, rule 31 of the Texas Rules of Civil Procedure, and sections 51.003, 51.004, and 51.005 of the Texas Property Code; (c) protest; (d) notice of extensions, increases, renewals, or rearrangements of the Guaranteed Indebtedness; and (e) notice of acceptance of this guaranty, of creation of the Guaranteed Indebtedness, of failure to pay the Guaranteed Indebtedness as it matures, of any other default, of adverse change in Borrower's financial condition, of release or substitution of collateral, of intent to accelerate, of acceleration, and of subordination of Lender's rights in any collateral, and every other notice of every kind. Guarantor's obligations under this guaranty will not be altered nor will Lender be liable to Guarantor because of any action or inaction of Lender in regard to a matter waived or of which notice is waived by Guarantor in the preceding sentence.

*       *       *

> Guarantor will remain liable for the Guaranteed Indebtedness even though the Guaranteed Indebtedness may be unenforceable against or uncollectible from Borrower or any other person because of incapacity, lack of power or authority, discharge, or any other reason.

(*Id.* at ¶2 and 6.)

### *The January 25, 2019 Guaranty – Note 4.*

25. On January 25, 2019, Guarantors executed three identical Guaranty agreements reiterating that the Guaranty is "an absolute, irrevocable, unconditional, and continuing guaranty of payment and performance and not of collection," meaning that Lender need not first obtain a judgment against Borrower before enforcing the Guaranty against Guarantors:

> Lender need not resort to Borrower or any other person or proceed against collateral before pursuing its rights against Guarantor or any other guarantor. Lender's action or inaction with respect to any right of Lender under the law or any agreement will not alter the obligation of Guarantor hereunder. Lender may pursue any remedy against Borrower or any collateral or under any other guaranty without altering the obligations of Guarantor hereunder and without liability to Guarantor, even though Lender's pursuit of such remedy may result in Guarantor's loss of rights of subrogation or to proceed against others for reimbursement of contribution or any other right.

(*See* Guaranty, ¶5, **Group Ex. 15**.)

> Guarantor waives (a) diligence in preserving liability of any person on the Guaranteed Indebtedness and in collecting or bringing suit to collect the Guaranteed Indebtedness; (b) all rights of Guarantor under chapter 43 of the Texas Civil Practice and Remedies Code, section 17.001 of the Texas Civil Practice and Remedies Code, rule 31 of the Texas Rules of Civil Procedure, and sections 51.003, 51.004, and 51.005 of the Texas Property Code; (c) protest; (d) notice of extensions, increases, renewals, or rearrangements of the Guaranteed Indebtedness; and (e) notice of acceptance of this guaranty, of creation of the Guaranteed Indebtedness, of failure to pay the Guaranteed Indebtedness as it matures, of any other default, of adverse change in Borrower's financial condition, of release or substitution of collateral, of intent to accelerate, of acceleration, and of subordination of Lender's rights in any collateral, and every other notice of every kind. Guarantor's obligations under this guaranty will not be altered nor will Lender be liable to Guarantor because of any action or inaction of Lender in regard to a matter waived or of which notice is waived by Guarantor in the preceding sentence.

*          *          *

> Guarantor will remain liable for the Guaranteed Indebtedness even though the Guaranteed Indebtedness may be unenforceable against or uncollectible from Borrower or any other person because of incapacity, lack of power or authority, discharge, or any other reason.

(*Id.* at ¶2 and 6.)

***The May 30, 2019 Guaranty – Note 5.***

26. On or about May 30, 2019, Guarantors executed a Guaranty guaranteeing payment of Note 5.

> Undersigned further unconditionally guarantees the faithful, prompt and complete compliance by Borrower with all terms and conditions of the Note, the Deed of Trust securing payment of the Liabilities and all other agreements, documents and instruments securing payment of the Liabilities or related thereto (such Note, Deed of Trust and all other instrument collectively referred to hereinafter as the "Loan Document").

(*See* (b) **Group Ex. 16**.)

The Guaranty is a guaranty of payment and not of collection, meaning that Lender need not first obtain a judgment against Borrower before enforcing the Guaranty against Guarantors:

> The obligations of the undersigned hereunder are independent of the obligations of Borrower, and a separate action or actions for payment, damages or performance may be brought and prosecuted against the undersigned, or any one of them, whether or not an action is brought against Borrower or the security for Borrower's obligations, and whether or not Borrower be joined in any such action or actions, and whether or not notice be given or demand be made upon Borrower.
>
> It is fully understood that until each and every one of the covenants and agreement of this Guaranty are fully performed, the undersigned's obligations shall not be released in whole or in part, by any action or thing which might, but for this provisions of this instrument, be deemed a legal or equitable discharge of a surety or guarantor, or by reason of any waiver, extension, modification, forbearance or delay or other act or omission of Lender or its failure to proceed promptly or otherwise, or by reason of any action taken or omitted by Lender, whether or not such action or failure to act varies or increases the risk or affects the rights or remedies of the undersigned, or by reason of any further dealings between Borrower, Lender or any other guarantor. and the undersigned hereby expressly waive and surrender any defense to its liability hereunder based upon any of the foregoing acts, omissions, things, agreements or waivers of any of them; it being the purpose and intent of the parties hereto that the covenants, agreements and all obligations hereunder are absolute, unconditional and irrevocable under any and all circumstances except as provided hereinafter.

(*Id.*)

Accordingly, Guarantors waived any right to reduce their liability for the outstanding indebtedness. *See Moayedi v. Interstate 35/Chisam Road, L.P.,* 438 S.W.3d 1, 7-8 (Tex. 2014)

(holding that broad waiver of defenses in guaranty waives right to any reduction of post-foreclosure deficiency). (*See* Group **Exs. 12-16**.) [4]

C. **ASSIGNMENT FROM ORIGINAL LENDER TO PLAINTIFF**

27. On March 22, 2024, the above Original Lender assigned the Deed of Trust to Plaintiff Senior Housing Reposition Partners 9, LLC, a Colorado limited liability company represented by the following:

- Assignment and Assumption of Loan Documents attached hereto as **Ex. 17**;
- Assignment of Deeds of Trust attached hereto as **Ex. 18**;
- Allonge to Promissory Note associated with Note 1, above attached as Ex. 1;
- Allonge to Promissory Note associated with Note 2, above attached as Ex. 2;
- Allonge to Promissory Note associated with Note 3, above attached as Ex. 3;
- Allonge to Promissory Note associated with Note 4, above attached as Ex. 4; and
- Allonge to Promissory Note associated with Note 5, above attached as Ex. 5.

28. The Notes, Commercial Security Agreement, Deeds of Trust, the Guarantees, and any and all other documents executed in connection therewith and/or relating in any way thereto are referred to hereinafter either individually, or collectively, as the "**Loan Documents**." Pursuant to a series of endorsements, assignments, and/or transfers, Lender is the current owner of the Loan Documents.

---

[4] The Guaranty Agreements are governed by Texas law. (*See* Commercial Security Agreement, p. 2; Guaranty, ¶11.)

**D.     BORROWER'S DEFAULTS**

29.     On March 22, 2024, Lender sent a Pre-Negotiation Agreement addressed to Borrower and Guarantors, which was signed by Plaintiff and Defendant Chad Cable as representative of the Borrower and individually. (*See* **Ex. 19**.)

30.     The Pre-Negotiation Agreement acknowledged Borrower's monetary default. *Id.*

31.     The Pre-Negotiation Agreement also acknowledged Borrower's default for (1) not making payments on the principal balance of Note 1, and (2) failing to pay property taxes, which constitute a default under all Notes referenced above. (*Id*; *see also* Exs. **1-5**.)

32.     On March 28, 2024, Lender sent Borrower and Guarantors a Notice of Default and Intent to Accelerate, demanding Borrower bring the loan current by paying $233,644.07 on the Notes and $547,035.54 for the past due real estate taxes. (*See* **Ex. 20**.)

33.     On April 3, 2024, Lender sent Borrower and Guarantors a Request for Information letter with an attached list of required information. (*See* **Ex. 21**.)

34.     On April 3, 2024, Lender sent a Notice of Defaults and Intent to Accelerate to Borrower and Guarantors. (*See* **Ex. 22**.)

35.     On April 19, 2024, Lender sent a Notice of Non-Responsiveness to Defendants Phil Morgan and the Estate of James L. Masters, which served as a second notice that Lender would be accelerating all amounts due by Borrower to Lender under the Loan Documents. (*See* **Ex. 23**.)

36.     The following are the respective Notes with amounts due as of May 3, 2024. These amounts do not include attorneys' fees and costs which continue to accumulate along with the interest, costs and fees below:

| Principal Balance | Interests, Costs, Fees (as of 3/28/24) | Total Default Notice | Daily Interest | Additional Interest Accrued | Monthly Payment Amount Due April 15th | Late Fee | Payoff Amount |
|---|---|---|---|---|---|---|---|
| 5,227,749.10 | 456,493.26 | $ 5,684,242.36 | 651.67831 | $ 22,808.74 | $ 29,197.77 | $ 1,459.89 | $ 5,708,510.99 |
| 2,649,193.00 | 367,548.99 | $ 3,016,741.99 | 558.87085 | $ 19,560.48 | $ 22,265.72 | $ 1,113.29 | $ 3,037,415.76 |
| 1,297,202.21 | 128,450.33 | $ 1,425,652.54 | $ 161.70603 | $ 5,659.71 | $ 9,013.63 | $ 450.68 | $ 1,431,762.93 |
| 113,172.31 | 17,917.78 | $ 131,090.09 | $ 29.45581 | $ 1,030.95 | $ 1,202.21 | $ 60.11 | $ 132,181.15 |
| 110,431.17 | 17,743.21 | $ 128,174.38 | $ 29.49874 | $ 1,032.46 | $ 1,202.05 | $ 60.10 | $ 129,266.94 |
| 9,397,747.79 | 988,153.57 | $ 10,385,901.36 | $ 1,431.2097 | $ 50,092.34 | $ 62,881.38 | $ 3,144.07 | $ 10,439,137.77 |

E.    **GUARANTORS' RECOURSE LIABILITY**

37.    As outlined above, and pursuant to the Guarantees, Guarantors are fully and personally liable for the $10,430,137.77 outstanding indebtedness.

38.    Furthermore, Guarantors are personally liable for all losses arising out of or in connection with Borrower's multiple long-standing breaches of the Loan. That includes, among other things, (i) all costs and expenses incurred by Lender, including attorneys' fees; and (ii) unpaid real estate taxes. (*See* **Ex. 24**.)

## V. CAUSES OF ACTION AND REMEDIES

A.    **BREACH OF CONTRACT**

39.    Lender incorporates by reference all of the paragraphs above and below to the extent they are consistent herewith.

40.    Lender is the holder and beneficiary of the Guarantees. As a result of the Borrower's defaults described herein, the Notes have been accelerated, and all amounts due and owing have been guaranteed by the Guarantors and are due and owing. Guarantors have failed to pay the amounts outstanding under the Notes and are therefore in breach of the Guarantees. Accordingly, each of the Guarantors are liable to Lender for the amounts outstanding under the Notes.

B.    **ATTORNEYS' FEES**

41.    Lender incorporates by reference all of the paragraphs above and below to the extent they are consistent herewith.

42. Because of Guarantors' actions, Lender has found it necessary to engage the law firm of Holland & Knight LLP to prosecute this action and to protect its rights. Pursuant to the terms of the Loan Documents and Section 38.001 of the Texas Civil Practice and Remedies Code, *et seq.*, Lender is entitled to recover its reasonable and necessary attorneys' fees incurred in the prosecution of this action.

## VI. CONDITIONS PRECEDENT

43. Lender has satisfied all conditions precedent for bringing this action.

## VII. PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Lender respectfully requests the following relief:

    a.    Guarantors be cited to appear and answer herein; and

    b.    On final trial hereof, Lender have judgment against Guarantors for Lender's actual damages, as provided in the Loan Documents, and interest to the extent allowed by applicable law, together with its reasonable and necessary attorneys' fees and all costs of court, and such other and further relief, both general and special, at law or in equity, to which Lender may be justly entitled.

    c.    That the Court grant any other such, general, or different relief to which Lender may be entitled.

Respectfully submitted,

**HOLLAND & KNIGHT LLP**

/s/ *Trip Nix*
Morris D. Weiss
State Bar No. 21110850
William R. "Trip" Nix
State Bar No. 24092902
100 Congress Avenue, Suite 1800
Austin, Texas 78701
(512) 685-6400
(512) 685-6417 (FAX)
Email: morris.weiss@hklaw.com
       trip.nix@hklaw.com

Douglas R. Salisbury
State Bar No. 24083782
1722 Routh Street, Suite 1500
Dallas, Texas 75201
(214) 969-1230
(214) 964-9501 (FAX)
Email: douglas.salisbury@hklaw.com

**ATTORNEYS FOR PLAINTIFF**